UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINSON TOOMER, #687667,

                  Petitioner,

v.                                  Case No. 3:21-CV-11681

BECKY CARL,

                  Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

### I.   INTRODUCTION

Michigan prisoner Vinson Toomer ("Petitioner") filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), following a bench trial in the Wayne County Circuit Court. He was sentenced to 10 to 20 years imprisonment in 2018. In his habeas petition, he raises claims concerning the pre-trial identification procedures, the effectiveness of trial counsel, and the validity of his sentence. For the reasons set forth, the court concludes that the habeas petition must be denied. The court also concludes that a certificate of appealability must be denied.

### II.   BACKGROUND

Petitioner's convictions arise from a home invasion that occurred in Detroit, Michigan on March 2, 2018. The Michigan Court of Appeals described the relevant facts,

which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*,

581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises out of a home invasion. After hearing someone knock on the victim's front door, the victim went downstairs, looked through the peephole for approximately 10 seconds, and observed a slender, 5'11," light-complexioned African-American male with goatee-styled facial hair. The man wore a light gray jacket, pants, and a green or gray skull cap. The victim did not answer his door because he did not know the man. Although the victim observed the man walk to his back door, he assumed the man left his home. After the victim went upstairs, he heard a loud bang at his back door. The victim hid under a bed in his guest bedroom, telephoned 911, and texted family for help.
>
> When the victim no longer heard the men, he looked out of a window and noticed a silver Chevrolet back into his driveway. A dark-complexioned African-American man walked up to the silver vehicle. The police arrived immediately thereafter. Detroit Police Officer Mia Nikolich tried to stop the men from driving away. Officer Kevin Butters chased a man he described as having a dark complexion from the victim's home, but was unable to apprehend the suspect.
>
> Detroit Police Sergeants Joseph Machon and Shaun Dunning were led by citizens to an area where a man was seen running through several backyards, and followed footprints in the snow to a garage behind a vacant home. Sergeants Dunning and Machon found defendant hiding in the rafters of the garage, wearing running shorts and a t-shirt, and arrested defendant. At trial, Sergeant Dunning testified that he believed defendant was the man who ran from the victim's home because he had bruised knees and cuts all over his arms, which indicated to Sergeant Dunning that defendant ran through some type of brush or backyard foliage.
>
> Detroit Police Officer Tyran Hogan arranged for an attorney to assist him construct a six-person black and white photographic lineup. Defendant's mugshot from a previous arrest was depicted in the number two position of the array. The victim chose another photograph in the array. The victim identified defendant in court at defendant's preliminary examination and at trial as the perpetrator.

*People v. Toomer*, No. 345145, 2020 WL 1487706, *1 (Mich. Ct. App. Mar. 24, 2020).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions and sentences. *Id.* at *1-8. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Toomer*, 506 Mich. 941, 949 N.W.2d 690 (2020).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.      A defendant is denied due process of law when an identification procedure is unnecessarily suggestive and conducive to irreparable misidentification and when he is denied the effective assistance of counsel.   [He] was denied due process of law by an unduly suggestive identification procedure which tainted an in-court identification that had no independent basis and trial counsel was ineffective for failing to move to suppress the in-court identification.

II.     [His] due process rights were [in]fringed upon [where] the sentencing court's sentence [was] in part [based on his] refusal to admit guilt. [He] is entitled to resentencing where the trial court imposed its sentence based upon [his] refusal to admit guilt.

ECF No. 1, PageID.4, 6.

### III.   STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.   The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

        "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

        "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly

4

deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is

within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.   *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the

6

reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).   Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   DISCUSSION

### A.   Procedural Default

As an initial matter, Respondent contends that Petitioner's claims are barred by procedural default. The court declines to address this defense. While a state procedural default can, and often should, provide sufficient reason for a federal court to deny habeas relief, *see Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) ("Comity and federalism demand nothing less."), procedural default is not a jurisdictional bar to habeas review. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). The Supreme Court has explained the rationale behind such a policy: "Judicial economy

7

might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and intertwined with the merits of the ineffective assistance of counsel claim, and the substantive claims are more readily decided on the merits. Accordingly, the court shall proceed to the merits of the claims.

## B.   Merits

### 1.   Suggestive Identification Claim

Petitioner first asserts that the is entitled to habeas relief because of unduly suggestive identification procedures. In particular, he asserts that a police officer improperly indicated to the victim that Petitioner's photograph was included in a pre-trial photographic array by telling the victim to choose a person in the array and that the victim's in-court identification was impermissibly suggestive because the victim would naturally identify him. Respondent contends that this claim lacks merit.

Due process protects a defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). Due process thus requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure

8

gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). The evil to be avoided is that an initial improper identification procedure unduly influence later investigation and will result in misidentification at trial. *United States v. Wade*, 388 U.S. 218, 229 (1967). A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id*. at 240 n. 31. If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

The Michigan Court of Appeals considered this claim on plain error review and denied relief. The court explained in relevant part:

> In challenging the photographic identification procedure, defendant relies on the victim's testimony taken out of context. When read in context, the victim did not imply that the officer told him that defendant's photograph was included in the array, as defendant suggests. Officer Hogan did not conduct a live lineup because there were not enough people in custody that matched defendant's description. As a result, Officer Hogan had an attorney assist him construct a six-person black and white photographic lineup. Officer Hogan selected black and white photographs to avoid suggestiveness of complexion tone. Defendant's mugshot from a previous

arrest was included in the photographic array. The matter of the victim having to choose a photograph pertained only to the victim wavering in choosing between two photographs, and the requirement that only one photograph could be selected. The victim clarified that it took him approximately 10 minutes to choose a photograph from the array, and that he chose the photograph because of the man's facial structure. The victim said, "I only had to write on one person. They didn't give me the option to write on any other." Defendant fails to establish that the victim's testimony inferred that the officer told the victim that defendant had been arrested, defendant's photograph was included in the photographic array, or mandated the victim to select a person from the photographic array. Also, defendant fails to provide evidence showing that the officer, in any manner, singled defendant out of the six-person photographic array. Therefore, defendant fails to establish that the photographic identification procedure improperly suggested defendant as the perpetrator, in violation of his due-process rights. *Gray*, 457 Mich. at 111.

It is also difficult to understand how the photographic identification procedure was suggestive when the victim failed to identify defendant. The victim's misidentification did not serve to convict defendant. The victim's failure to choose defendant from the photographic array went to the weight of the victim's in-court identification of defendant, not its admissibility. *Id.* at 124 ("any evidence of the victim's lack of certainty would be relevant to the weight that the evidence should be given, but not to its admissibility.").

In support of defendant's challenge to the victim's in-court identification of defendant, defendant cites to *Gray*, 457 Mich. at 111, to show that viewing defendant at defense counsel table, like the exhibition of a single photograph, is one of the most suggestive identification procedures that can be used. On cross-examination, defense counsel asked the victim whether he identified defendant as the perpetrator at defendant's preliminary examination, merely because defendant was seated at defense counsel's table. The victim answered in the negative, and stating:

> Not necessarily. So I would have to disagree with the fact that I figured he was the man just because he was the one that was there. If he was someone different, if he was somebody who had a different description than I had given, I wouldn't have assumed that he was [sic] man.

Thus, defendant fails to show how his citation to *Gray* supports his argument, since the victim explicitly denied that he identified defendant because defendant was seated at defense counsel's table.

Defendant also contends that the victim's in-court identification of defendant was unduly suggestive and subject to misidentification. Defendant argues that defense counsel failed to place the burden on the prosecution to establish by clear and convincing evidence an independent basis for the victim's in-court identification. Defendant's assertions lack merit.

"The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v. Barclay*, 208 Mich. App. 670, 675; 528 N.W.2d 842 (1995). Because the photographic identification procedure was not improper or unduly suggestive, defendant fails to establish any basis on which the victim's pretrial identification testimony could have been suppressed. Therefore, there was no need for the prosecution to find an independent basis for in-court identification.

Defendant also asserts that the victim was the only witness to positively identify defendant at trial, and therefore, the trial court relied on the victim's in-court identification to find defendant guilty. The trial court expressly indicated that the identification of defendant by the victim was not, by itself, the determining factor in finding defendant guilty. The trial court stated that defendant was also identified by a police officer at the scene—who observed defendant standing in the victim's driveway with a television in his hand. Defendant's contention is further undermined by the fact that "positive identification by witnesses may be sufficient to support a conviction of a crime[,]" *People v. Davis*, 241 Mich. App. 697, 700; 617 N.W.2d 381 (2000) (citation omitted), and defense counsel cross-examined the victim regarding his identification of defendant. See id. at 704, citing *United States v. Wade*, 388 U.S. 218, 231-232; 87 S. Ct. 1926; 18 L. Ed. 2d 1149 (1967) ("the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification."). Thus, defendant fails to establish that his due-process rights were violated by the victim's in-court identification of defendant.

*Toomer*, 2020 WL 1487706 at *2-3.

11

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to the photographic array, the Supreme Court has stated that the risk of misidentification from a photo array increases where (1) "the police display to the witness only the picture of a single individual who generally resembles the person he saw;" (2) the police show the witness "the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized;" or (3) "the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In sum, an identification based on a photo pack is unduly suggestive if the circumstances "steer[ ] the witness to one suspect or another, independent of the witness's honest recollection." *Williams v. Lavigne*, 209 F. App'x 506, 510 (6th Cir. 2006) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001)).

In this case, the victim was shown a six-pack of black and white photos of men who shared Petitioner's general characteristics, the police did not highlight Petitioner's photo during the procedure, and someone who did not know the suspect conducted the array. (*See* 6/27/18 Trial Tr., ECF No. 11-8, PageID.386-391.) While the officer told the victim to pick one person out of the array, he did not indicate who the victim should select. (*Id*. at PageID.258-259.) To be sure, the record indicates that the victim took several minutes to choose between two of the photos and picked someone other than Petitioner out of the array. (*Id*. at PageID.259-260.) The officer's conduct in asking the victim to choose one person from the photo array did not render the photo array unduly

suggestive.   *See United States v. Porter*, 29 F. App'x 232, 237 (6th Cir. 2002) (upholding the admission of a photo identification where the officer told the witness that the array contained the suspect, but did not suggest which of the six photos showed that suspect). Nonetheless, even the officer's remark was improper, Petitioner cannot establish that he was prejudiced by the procedure given that the victim picked someone else out of the array. Given such circumstances, Petitioner fails to show that the photo array was unduly suggestive and/or that he was prejudiced by the photo array.

Additionally, as to the victim's identifications at the preliminary examination and the trial, the Supreme Court has recognized that all in-court identifications involve "some element of suggestion." *Perry*, 565 U.S. at 244. The Supreme Court, however, has not found a witness's identification of a defendant at a preliminary examination (or trial) to be a due process violation absent improper state conduct. As explained in *Perry*, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry*, 565 U.S. at 232. When no improper law enforcement activity is involved, "it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id*. at 233.

In this case, there was no improper law enforcement activity at the preliminary examination or the trial -- and the reliability tests outlined in *Perry* were followed during those proceedings. At the preliminary examination, Petitioner was represented by counsel, the victim identified Petitioner as the perpetrator and described what he was wearing on the day of the incident, and defense counsel cross-examined him about the identification. (*See* 3/19/18 Prelim. Hrg. Tr., ECF No. 11-2, PageID.175, 182-184.) At the bench trial, the victim again identified Petitioner as the perpetrator based upon his recollection of the incident, defense counsel cross-examined him about the identification, and the trial court outlined its rationale for finding Petitioner guilty. (6/27/18 Trial Tr., ECF No. 11-8, PageID.241-243, 262-264, 265-266, 272-278, 288-290, 6/28/18 Trial Tr., ECF No. 11-9, PageID.447-449.) Petitioner was afforded all the process he was due.   He fails to establish a violation of his constitutional rights. *See, e.g., Lewis v. Horton*, No. 5:18-CV-12542, 2021 WL 4443346, *9 (E.D. Mich. Sept. 28, 2021) (denying habeas relief on similar claim). In sum, Petitioner fails to show that the admission of the identification testimony rendered the trial fundamentally unfair. Habeas relief is not warranted on this claim.

## 2.   Ineffective Assistance of Counsel Claim

Petitioner relatedly asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to move to suppress the photographic identification procedure, the victim's preliminary examination identification, and the victim's in-court identification. Respondent contends that this claim lacks merit.

14

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of trial counsel. First, a petitioner must prove that counsel's performance was deficient.   This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.   Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

15

so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief. The court explained in relevant part:

> Defendant asserts that if defense counsel had moved to suppress the photographic identification procedure, then the victim's in-court identification of defendant would not have been admitted. Defendant's assertion is without merit. As already discussed, defendant fails to demonstrate that the photographic identification procedure was improper or suggestive. Therefore, had defense counsel moved to suppress the photographic identification procedure, the motion would have been futile. "Trial counsel is not ineffective for failing to advocate a meritless position." *People v. Payne*, 285 Mich. App. 181, 191; 774 N.W.2d 714 (2009).

> Defendant also asserts he was denied the effective assistance of counsel because defense counsel failed to move to suppress the victim's pretrial identification testimony. Defendant argues that the victim's pretrial identification testimony was tainted, and that without the tainted testimony, defendant would not have been found guilty. "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony

16

concerning that identification is inadmissible at trial." *Kurylczyk*, 443 Mich. at 303.

During trial, the victim testified that at the photographic identification procedure, he stared at the photographic array for approximately 10 minutes before choosing a photograph. The victim said his first in-court identification of defendant as the perpetrator occurred at defendant's preliminary examination, and that at the preliminary examination he continued to believe defendant was the man he chose from the array. The photograph the victim chose was not defendant's photograph, consequently, the victim's misidentification did not serve to convict defendant. The failure of the victim to choose defendant from the photographic array went to the weight of the victim's in-court identification of defendant, not its admissibility. *Gray*, 457 Mich. at 124 ("any evidence of the victim's lack of certainty would be relevant to the weight that the evidence should be given, but not to its admissibility."). While the trial court may have had reason to question the credibility of the victim's in-court identification of defendant, in light of the victim's misidentification at the photographic identification procedure, the trial court apparently credited the victim's testimony, and this Court will not interfere with the trial court's credibility determinations. *Davis*, 241 Mich. App. at 700 ("The credibility of identification testimony is a question for the trier of fact that we will not resolve anew."). In addition, the victim denied that he identified defendant as the perpetrator merely because defendant was seated at defense counsel's table. Therefore, defendant fails to establish any basis on which the victim's pretrial identification testimony could have been suppressed. *Kurylczyk*, 443 Mich. at 303.

There was no need to establish an independent basis for the victim's in-court identification of defendant because, as already discussed, the photographic identification procedure was not improper or impermissibly suggestive. *Barclay*, 208 Mich. App. at 675. Further, the trial court found defendant guilty on the basis of the in-court identification of defendant as the perpetrator by the victim and Officer Butters. The trial court explained that Officer Butters identified the victim as the person he saw in the victim's driveway—with the television in his hand—at the scene of the crime. Moreover, the trial court found that the circumstance under which defendant was arrested was also indicative of defendant's guilt. Sergeants Dunning and Machon found defendant hiding in the rafters of the garage, and wearing running shorts and a t-shirt when it was cold outside with snow on the ground. Sergeant Dunning believed defendant was the individual who ran from the victim's home because he had bruised knees and cuts all over his arms, suggesting that defendant ran through some

type of brush or backyard foliage. Thus, defendant fails to establish the factual predicate of his claim. *Carbin*, 463 Mich. at 600.

In satisfying the second *Strickland* prong, "a defendant must show that ... but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich. at 51. Again, the victim's photographic identification of defendant was not the basis of defendant's guilt, considering that the victim did not select defendant's photograph in the lineup. Rather, the trial court found defendant guilty on the basis of the in-court identification of defendant by the victim and Officer Butters, as well as the testimony of Sergeants Dunning and Machon. Therefore, even assuming defense counsel erred by failing to object to the photographic identification procedure or testimony, defendant fails to establish that but for defense counsel's failure, the result of the proceeding would have been different. *Carbin*, 463 Mich. at 600.

*Toomer*, 2020 WL 1487706 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' decision, as well as this court's determination, that the identification procedures were not improper, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).

Moreover, trial counsel may have reasonably decided not to object to the photographic array procedure because the victim selected someone other than Petitioner from the array and to challenge the victim's preliminary hearing and trial identifications through cross-examination. Such tactics were reasonable. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was

18

ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Lastly, even if it could be said that trial counsel erred by failing to object to the identification procedures, Petitioner fails to show that he was prejudiced by counsel's conduct. The prosecutor presented other significant evidence of Petitioner's guilt – namely the police identification testimony and arrest testimony – at trial. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 3.   Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court based its sentencing decision on his refusal to admit guilt. Respondent contends that this claim lacks merit.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *see also Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature). Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentence of 10 to 20 years imprisonment is within the

statutory maximum for first-degree home invasion under Michigan law. *See* Mich.

Comp. Laws § 750.110a (authorizing a 20-year maximum sentence). Consequently, his

sentence is insulated from habeas review absent a federal constitutional violation.

The Michigan Court of Appeals considered this claim on plain error review and

denied relief. The court explained in relevant part:

> Next, defendant argues that he should be resentenced because the trial court based its sentence on defendant's refusal to admit guilt. We disagree.
>
> "A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *Payne*, 285 Mich. App. at 193-194, quoting *People v. Dobek*, 274 Mich. App. 58, 104; 732 N.W.2d 546 (2007). "However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." Id. "We look to three factors to determine if a sentencing court improperly considered a defendant's refusal to admit guilt: '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.'" *Payne*, 285 Mich. App. at 194, quoting *People v. Wesley*, 428 Mich. 708, 713; 411 N.W.2d 159 (1987).
>
> The first *Wesley* factor is not at issue because defendant maintained his innocence at the sentencing hearing. *See Payne*, 285 Mich. App. at 194 (citation omitted). However, the second and third *Wesley* factors are contested. Defendant argues that the second *Wesley* factor is satisfied because the trial court stated that defendant needed to recognize that his decisions affected the victims. In particular, the trial court said: "[D]ecisions that you made have affected other people in a traumatic way, sir. And you need to recognize that." Contrary to defendant's assertion, and when read in full context, the trial court noted that defendant ought to recognize the consequences of his decisions as defendant moves on with his life, in an effort to better himself.
>
> With regard to the third *Wesley* factor, defendant contends that his sentence would not have been as severe had he admitted guilt, because the trial court said, "[w]hat I find interesting is that Mr. Toomer you continue to maintain your innocence." Defendant's argument is unfounded. Again, defendant was sentenced within the guidelines. The

trial court said the facts of this case undermined defendant's assertion of innocence, when it imposed defendant's sentence. "A trial court must articulate its reasons for imposing a sentence on the record at the time of sentencing." *People v. Conley*, 270 Mich. App. 301, 312; 715 N.W.2d 377 (2006). When read in context, and in contrast to defendant's assertion, the trial court merely articulated its reasons for imposing defendant's sentence: "Mr. Toomer you continue to maintain your innocence; the facts say something totally different." The trial court's statements were more indicative of acknowledging defendant's lack of remorse, with regard to defendant's potential for rehabilitation. *Dobek*, 274 Mich. App. at 104. The trial court explained that it hoped defendant bettered himself, and said it was up to defendant to do so. Also, defendant's minimum sentence was at the high-end of the guidelines range because he was already serving a three-year term of probation for second-degree home invasion, at the time he committed the subject offense.

While it is true that defendant maintained his innocence after he was convicted, nothing in the record suggests that the trial court attempted to get defendant to admit guilt, or would have been more lenient had defendant admitted guilt. Therefore, resentencing is not warranted. *See Dobek*, 274 Mich. App. at 106 ("Considering the *Wesley* factors, we cannot conclude that defendant maintained his innocence after conviction, that the trial court attempted to make defendant admit guilt, or that the sentence would not have been as severe had defendant affirmatively admitted guilt.").

*Toomer*, 2020 WL 1487706 at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999), the Supreme Court held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances of the crime. The Supreme Court expressly declined to consider the questions of whether a defendant's silence bore upon a court's determination of lack of remorse or upon a defendant's acceptance of responsibility for the purpose of a downward departure

under the federal sentencing guidelines because those issues were not before the Court. *Id*.

While the trial court in this case commented on Petitioner's assertion of innocence at sentencing (*see* 7/16/18 Sent Tr., ECF No. 11-10, PageID.468) the court's remarks, when viewed as a whole and in context, reflect that the court was concerned about the facts of the crime, the effect on the victim, and Petitioner's lack of remorse and capacity for rehabilitation (*Id*. at PageID.468-469), rather than penalizing him for any refusal to admit guilt at the time of trial or sentencing. *See Paluskas v. Bock*, 410 F. Supp. 2d 602, 615 (E.D. Mich. 2006) (denying habeas relief on similar claim). Lack of remorse and potential for rehabilitation are appropriate sentencing considerations under Michigan law, *see People v. Houston*, 448 Mich. 312, 323, 532 N.W.2d 508 (1995), and are not precluded by federal law. *See In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) ("It is well established that a defendant's remorse-or lack thereof-is an appropriate consideration in meting out punishment."); *United States v. Castillo-Garcia*, 205 F.3d 887, 889 (6th Cir. 2000) (lack of true remorse is valid consideration under federal sentencing guideline providing for downward adjustment based upon acceptance of responsibility). The record indicates that the state trial court imposed a sentence based upon the circumstances of the crime, Petitioner's lack of remorse, and other permissible considerations. At a minimum, the Michigan Court of Appeals' determination to that effect is reasonable. Habeas relief is not warranted on this claim.

## V.   CONCLUSION

Based on the foregoing discussion, the court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and DISMISSED WITH PREJUDICE.

Before Petitioner may appeal, a certificate of appealability must issue.   28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may only issue if a habeas petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The court concludes that Petitioner makes no such showing. Accordingly, IT IS ORDERED that a certificate of appealability is DENIED.

s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 12, 2023, by electronic and/or ordinary mail.

s/Kim Grimes_____
Deputy Clerk

Dated:   June 12, 2023

S:\Cleland\Cleland\JUDGE'S DESK\C3 ORDERS\21-11681.TOOMER.2254.habeas.docx